## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| SETH BARRETH, | |
| Plaintiff, | Civil Action No.: |
| v. | 5:19-cv-00320-TES |
| REYES 1, INC. d/b/a Little Caesars Pizza, | |
| Defendant. | **JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT

COMES NOW, Plaintiff Seth Barreth, and brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. Plaintiff alleges that Defendant Reyes 1, Inc. d/b/a Little Caesars Pizza subjected Plaintiff to harassment and a hostile work environment and constructive termination based on sex, and retaliation after he engaged in protected activities, as follows:

### JURISDICTION AND VENUE

1.

This Court has original jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, 28 U.S.C. § 1331, and 28 U.S.C. § 1343.

2.

Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) and 5 U.S.C. § 7703(b)(2) because Plaintiff was employed and the events underlying this action occurred in Macon-Bibb County, Georgia, which is located in this judicial district.

## PARTIES

### 3.

Plaintiff Seth Barreth (hereinafter, "Plaintiff" or "Doe") is a citizen of the United States and a resident of Georgia.  At all times relevant to this suit, Mr. Barreth was employed with Defendant Reyes 1, Inc. d/b/a Little Caesars Pizza, primarily at the location at 120 Tom Hill Sr. Boulevard, Macon, Bibb County, Georgia 31210.

### 4.

At all relevant times, Mr. Barreth was considered a covered employee under Title VII of the Civil Rights Act.

### 5.

Defendant Reyes 1, Inc. d/b/a Little Caesars Pizza (hereinafter, "Defendant") is a domestic profit corporation, incorporated under the laws of the State of Georgia.

### 6.

Defendant's principal office address is 304 Lee Road #424, Salem, Alabama, 36874, and Defendant may be served with process through its registered agent, M. Jason Harmon at 1477 Pio Nono Avenue, Macon, Bibb County, Georgia 31204.

### 7.

Defendant is a private employer engaged in interstate commerce, with annual revenue in excess of $500,000.  Defendant has more than fifteen employees who have worked for at least twenty calendar weeks in 2019 and proceeding years. Defendant is a covered entity and employer within the meaning of Title VI of the Civil Rights Act.

## STATEMENT OF FACTS

8.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 7, as if the same were set forth herein.

9.

Mr. Barreth was assigned female at birth and began his transition to presenting as male in approximately 2013.  Mr. Barreth has since legally changed his name, but he has been unable to change his gender markers on his government-issued identification until certain medical requirements have been met, pursuant to state law.  Nonetheless, Mr. Barreth presents, and presented during his employment, entirely as male.

10.

Mr. Barreth did not mention his transition or gender identity during his employment interview with Defendant or before he was informed that he had been hired.

11.

Mr. Barreth participated in a telephone interview with Store Manager Lachelle Lester in April 2018.

12.

Based on his interview, Defendant decided to hire Mr. Barreth as a Crew Member, and Ms. Lester requested that Mr. Barreth come in to fill out onboarding forms and receive his uniform shirts.

13.

Mr. Barreth went to the store on April 26, 2018.  At that time, Ms. Lester told Mr. Barreth that she was going to input his information into Defendant's internal system and that she had to run a background check.

14.

Because Mr. Barreth has not been able to have his gender corrected on his government-issued identification, he informed Ms. Lester that he would be identified as female and that he was transgender for the purposes of conducting his background check.

15.

Mr. Barreth asked Ms. Lester if this was going to be a problem, and she told him that it would not.

16.

At no point during this or prior conversations did Mr. Barreth authorize Ms. Lester, or any representative of Defendant, to disclose or discuss his gender identity or transition with anyone. Mr. Barreth did not ask Ms. Lester to instruct anyone to refer to him as any gender.

17.

Apparently, Ms. Lester disclosed Mr. Barreth's personal information, as Mr. Barreth was referred to as "she" by a coworker on the very first day of training.

18.

On May 17, 2018, Mr. Barreth and his direct supervisor, Shift Leader Indya Williams, were working alone in the store.

19.

While Mr. Barreth and Ms. Williams were preparing pizzas, Ms. Williams made several

inappropriate comments to Mr. Barreth.

20.

First, Ms. Williams said "I want to ask you something, but I don't want you to be offended." Knowing that Ms. Williams' questions were likely going to be offensive, Mr. Barreth tried to ignore her.  Ms. Williams then proceeded to clap her hands to get Mr. Barreth's attention.

21.

Ms. Williams then asked Mr. Barreth a serious of offensive questions, including, "do you have a dick?" "do you have titties, or did you have them removed?" and "are you on hormones?"

22.

When Mr. Barreth ignored this line of questioning, Ms. Williams mentioned that a member of her family who is gay and apparently engages in crossdressing.

23.

Finally, Ms. Williams said to Mr. Barreth, "you probably can't have kids, can you?"

24.

Mr. Barreth did not specifically respond to any of these comments; however, he did ask Ms. Williams who had disclosed his gender identity to her, as Mr. Barreth clearly had not intended for his gender identity or transition to be known or discussed by anyone.

25.

Mr. Barreth was extremely disturbed and offended by Ms. Williams' comments and questions.

26.

Mr. Barreth immediately stepped outside of the store and called Ms. Lester via telephone to report what had just occurred.

27.

Mr. Barreth explained that Ms. Williams had asked him questions about his genitalia and discussed his supposed inability to reproduce.  Mr. Barreth explained that this interaction made him feel offended and extremely uncomfortable.  During this call, Ms. Lester stated that she had already discussed this situation with everyone and that they were on the same page.

28.

Mr. Barreth was surprised that Ms. Lester had disclosed this information and when he asked Ms. Lester for clarification, she confirmed that she had discussed this matter and that "everyone" knew what was going on.

29.

Ms. Lester arrived at the store approximately thirty minutes later and finished the shift with Mr. Barreth and Ms. Williams.

30.

Subsequently, Ms. Lester failed to provide any disciplinary action to Ms. Williams for this conduct.

31.

When Mr. Barreth returned to work on subsequent occasions on the same shift as Ms. Williams, she began scrutinizing his work, she assigned Mr. Barreth to additional tasks, and she blamed him for things that had clearly not been his responsibility or fault and threatened to write him up.

32.

However, other than when Ms. Williams scolded Mr. Barreth, she refused to interact with him.

33.

Additionally, someone clearly discussed the May 17th incident or Mr. Barreth's gender identity with his coworkers and because his coworkers and supervisors began frequently calling him a "he-she" and making similar disparaging comments to and about Mr. Barreth and his gender identity.

34.

Mr. Barreth was extremely disturbed as a result of the May 17th incident and the subsequent treatment from Ms. Williams and his coworkers.

35.

Specifically, because of the unauthorized disclosure of this information and Ms. Williams' inappropriate comments, Mr. Barreth felt as though his comfort and privacy had been breached and that his sensitive medical information had been disseminated without permission.

36.

Mr. Barreth felt compromised and exposed in the workplace.  As Mr. Barreth would describe it, he felt like he was walking around naked and that people now knew what parts he had in his pants.

37.

Moreover, Mr. Barreth felt like he was in danger and was concerned for his safety, in part, due to the disproportionate rates of violence experienced by people who identify as transgender.

38.

To exacerbate things for Mr. Barreth further, Ms. Williams did not receive any discipline for her actions, and that Ms. Lester never followed up with Mr. Barreth to ensure that Ms. Williams' treatment had stopped or that Mr. Barreth was alright.

39.

As a result, Mr. Barreth felt as though he has no other choice but to resign.

40.

On Friday, May 25, 2018, Mr. Barreth sent a text message to Ms. Lester to inform her that he would not be coming in to work that day.  This absence was also a direct result of the treatment that he was experiencing at work.

41.

The next day, Mr. Barreth called the store and he told Ms. Williams that he would not be returning or coming back in and that he would turn in all of the Employer's items in his possession.

42.

After Mr. Barreth resigned, Defendant made it difficult for Mr. Barreth to receive his final paycheck.  Mr. Barreth was supposed to be paid on June 5, 2018; however, for the first time, Mr. Barreth's check was apparently deposited into the wrong account.

43.

When Mr. Barreth went to see Ms. Lester for his check, she had him wait in the waiting area in the store while she called the payroll department.  While Mr. Barreth waited, he could hear Ms. Lester laughing and he overheard her state that this was "Seth's problem."  Ms. Lester had Mr. Barreth wait for a significant amount of time, which resulted in Mr. Barreth missing a scheduled job interviewed.  Mr. Barreth's final check was mailed to him several days late, causing him additional financial difficulty.

44.

As a result of the Defendant's harassment of Mr. Barreth and unauthorized disclosure of his private information, he does not feel comfortable being in the area of Macon where the Little

Caesars at issue is located, especially because he fears that he will run into Ms. Williams or his other former coworkers due to their knowledge of this situation.

45.

Additionally, Mr. Barreth has now been concerned and uncomfortable about where he can work due to the possibility that a similar incident may happen again.

46.

In addition to the problems with the final paycheck, Defendant has taken additional actions to harass Mr. Barreth.  For example, in a written statement dated several months after the incident, Ms. Lester writes: "Couple days later Seth also came and talked to me *herself* about *her* life transition…;" and, quite astonishingly, "Seth also asked if myself and other employees *could address her as male b/c she was transitioning*…" (emphasis added).

47.

Ms. Lester referred to Mr. Barreth with female pronouns, despite the fact that she stated that she was told that Mr. Barreth was in transition from *female to male* and, in the comments above, she explicitly stated that Mr. Barreth wanted to be referred to as male.

Procedural/Administrative Background

48.

On or about June 25, 2018, Mr. Barreth submitted correspondence entitled Charge of Discrimination to the Equal Employment Opportunity Commission (hereinafter, "EEOC").

49.

On or about July 30, 2018, Mr. Barreth returned his EEOC Form 5 Charge of Discrimination to the EEOC (EEOC Charge No. 410-2018-06989).

50.

For some unknown reason, the EEOC sent a second and identical EEOC Form 5 Charge of Discrimination to Mr. Barreth, which Mr. Barreth returned on September 5, 2018.

51.

Subsequently, the EEOC sent correspondence dated October 25, 2018, and a Dismissal and Notice of Rights dated November 15, 2018, which were both received by the undersigned on November 19, 2018.  In said correspondence, the EEOC erroneously stated that Mr. Barreth's Charge of Discrimination were not covered under the applicable laws.

52.

On or around December 4, 2018, the EEOC issued its Reconsideration Notice and Revocation of Right to Sue, admitting that the Notice of Right to Sue dated November 15, 2018, had been issued due to an administrative error.

53.

On May 20, 2019, Mr. Barreth, through counsel, received a second Dismissal and Notice of Right to Sue dated May 14, 2019, and Mr. Barreth has filed the instant litigation within ninety (90) days of his receipt of said Right to Sue.

**COUNT I:**
**HOSTILE WORK ENVIRONMENT DUE TO SEX**
**IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**

54.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 53, as if the same were set forth herein.

55.

Under Title VII of the Civil Right Act, it is unlawful for an employer to discriminate against or harass any of its employees on the basis of sex.  *See* 42 U.S.C. § 2000e-2(a).

56.

"Sex discrimination includes discrimination against a transgender person for gender nonconformity."  *Chavez v. Credit Nation Auto Sales, LLC*, 641 Fed. App'x 883, 884 (11th Cir. 2016) (citing *Glenn v. Brumby*, 663 F.3d 1312, 1316-17 (11th Cir. 2011)).

57.

As alleged herein, Defendant and Plaintiff are a covered, non-exempt employer and employee under Title VII, respectively.  *See* 42 U.S.C. §§ 2000e & 2000e-1.

58.

Plaintiff is a member of a protected class in that he is male.

59.

As alleged herein, Defendant's employees, particularly Plaintiff's direct supervisor, subjected Plaintiff to conduct, epithets, and inappropriate comments that were objectively offensive and unwelcomed, and there were entirely inappropriate in any workplace.

60.

As alleged herein, Plaintiff personally found such conduct and words extremely offensive.

61.

The conduct in question was directly connected to Plaintiff's sex, gender identity, and notions of stereotyping based on sex.

62.

As alleged herein, the conduct was severe and pervasive enough to create a hostile work environment that a reasonable person would consider intimidating, hostile, and abusive.

63.

Not only did Plaintiff's supervisors fail to address, correct, or provide Plaintiff with the opportunity to engage in any preventative or corrective measures, Plaintiff's direct supervisor was the source of much of the offensive conduct.

64.

Defendant is liable for the conduct of its non-supervisory employees as Defendant knew about the harassment of Plaintiff by its non-supervisory employees and Defendant failed to take prompt and appropriate corrective measures.

65.

Defendant is unable to articulate any legitimate, nondiscriminatory reason for the offensive conduct.

66.

Plaintiff has been inured by Defendant's harassment and hostile work environment, and Plaintiff is entitled to all damages allowed under Title VII of the Civil Rights Act, including attorney's fees and costs of litigation, in an amount to be proven at trial.

## COUNT II:
## RETALIATION
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

67.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 53, as if the same were set forth herein.

68.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to discriminate against or harass any of its employees because an employee has opposed any practice made unlawful by Title VII.  42 U.S.C. § 2000e-3(a).

69.

As alleged herein, Defendant and Plaintiff are a covered, non-exempt employer and employee under Title VII, respectively, *See* 42 U.S.C. §§ 2000e & 2000e-1.

70.

Plaintiff was engaged in a protected activity when he reported Ms. Williams' harassment of him to her supervisor, Ms. Lester.

71.

As alleged herein, Defendant subjected Plaintiff to adverse employment actions in response to said participation in a protected activity, including, but not limited to, increased harassment and scrutiny of his work, offensive and inappropriate comments, and making it difficult to receive his final paycheck.

72.

Defendant's conduct as alleged herein constitutes retaliation in violation of Title VII. Plaintiff will prove that Defendant's stated reasons for its conduct were not the true reasons but, instead, were pretext to hide Defendant's retaliatory actions.

73.

Plaintiff has been injured by Defendant's unlawful retaliation and is entitled to all damages allowed under Title VII of the Civil Rights act, including attorney's fees and costs of litigation, in an amount to be proven at trial.

## COUNT III:
## CONSTRUCTIVE DISCHARGE
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

74.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 53, as if the same were set forth herein.

75.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to discharge any employee on the basis of sex.  *See* 42 U.S.C. § 2000e-2(a).

76.

A claim for constructive discharge "is appropriate when an employer discriminates against an employee to the point such that his working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign."  *Hicks v. City of Tuscaloosa, Ala.*, 870 F.3d 1253, 1258 (11th Cir. 2017).

77.

As alleged herein, Defendant and Plaintiff are a covered, non-exempt employer and employee un Title VII, respectively.  *See* 42 U.S.C. §§ 2000e & 2000e-1.

78.

As alleged herein, Defendant subjected Plaintiff to offensive comments and epithets based on his sex and gender identity, including comments about his genitalia and supposed inability to

reproduce.

79.

Moreover, Defendant shared Plaintiff's personal and medical information with most, if not all, of Plaintiff's coworkers without Plaintiff's knowledge or permission.

80.

As a result of Defendant's actions, Plaintiff felt exposed and as though his safety was at risk, both within and outside of the workplace.

81.

Plaintiff's working conditions became so intolerable that he felt compelled to resign on May 26, 2018.

82.

Any reasonable person in Plaintiff's position, who is being subjected to epithets, inappropriate commentary and questions from his supervisor about his genitals and supposed inability to reproduce, and the disclosure of his private and medical information to most, if not all of his coworkers, would feel compelled to resign from their position.

83.

Defendant's conduct as alleged herein constitutes constructive discharge based on sex in violation of Title VII.  Plaintiff will prove that Defendant's stated reasons for its conduct were not the true reasons, but, instead, were pretext to hide Defendant's discriminatory animus.

84.

Because Defendant has disclosed Plaintiff's private and medical information and Plaintiff feels as though his safety is at risk, reinstatement would not be an appropriate remedy.

85.

Plaintiff has been injured by Defendant's constructive discharge, and is entitled to all damages allowed under Title VII, including back pay, front pay, compensatory and punitive damages, and attorney's fees and costs of litigation all in an amount to be proven at trial.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Seth Barreth respectfully prays for the following relief:

1)      That Summons and Process be issued to Defendant Reyes 1, Inc. d/b/a Little Caesars Pizza, and that said Defendant be served as provided by law;

2)      That this matter be tried before a jury;

3)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count I for subjecting Plaintiff to harassment and a hostile work environment, and grant Plaintiff all relief allowable under Title VII of the Civil Rights Act;

4)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count II for Defendant's retaliation against Plaintiff, and grant Plaintiff all relief allowable under Title VII of the Civil Rights Act;

5)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count III for Defendant's constructive discharge of Plaintiff, and grant Plaintiff all relief allowable under Title VII of the Civil Rights Act;

6)      For such other relief as this Court shall deem just and proper.

Respectfully submitted, this 19ᵗʰ day of August, 2019.

KENNETH E. BARTON III
Georgia Bar No. 301171
BRUCE D. DUBBERLY IV
Georgia Bar No. 809675
*Attorneys for Plaintiff*

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
(478) 841-9007 telephone
(478) 841-9002 facsimile
keb@cooperbarton.com
bdd@cooperbarton.com